IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3193-FL

| | | |
|---|---|---|
| ANTOINE MONTEZ MILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DAVID GUICE, GEORGE SOLOMON, | ) | |
| LARRY DUNSTON, KEIRAN | ) | |
| SHANAHAN, FRANK PERRY, and | ) | |
| BETTY BROWN | ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' motion to dismiss (DE 39) pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion.

**STATEMENT OF THE CASE**

On August 14, 2013, plaintiff filed this action, *pro se,* pursuant to 42 U.S.C. § 1983, against the following defendants: Commissioner for the North Carolina Division of Adult Correction, David Guice ("Guice"); Director of Prisons, George Solomon ("Solomon"); Deputy Director of Prisons, Gwen Norveil ("Norveil"); and Security Threat Group ("STG") coordinator, Larry Dunston ("Dunston"). The court subsequently permitted plaintiff leave to amend his complaint, and notified plaintiff that any amended complaint he subsequently filed would constitute the complaint in its entirety.

On November 27, 2013, plaintiff filed his amended complaint adding the following defendants: Secretary of the Department of Public Safety ("DPS"), Kieran Shanahan ("Shanahan");[1] and Director of Chaplaincy Services, Betty Brown ("Brown"). In his amended complaint, plaintiff alleged that defendants violated his rights pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution. Plaintiff also alleged that defendants violated his rights pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, et seq.

On April 10, 2014, the court entered an order in which it dismissed Norveil from this action because plaintiff failed to allege facts against Norveil in the amended complaint. The court also allowed plaintiff to proceed with his claims against the remaining defendants.

On July 28, 2014, defendants Brown, Dunston, Guice, Shanahan, and Solomon filed a motion to dismiss plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that plaintiff failed to state a claim upon which relief may be granted. Defendants, alternatively, assert the affirmative defense of qualified immunity. The motion was fully briefed.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff are as follows. Plaintiff, a state inmate, challenges DPS's "absolute ban" on the practice of the Nations of Gods and Earths

---

[1] Shanahan no longer is employed as the Secretary of the Department of Public Safety, and Frank Perry has replaced Shanahan in the position. Accordingly, Frank Perry is substituted for defendant Keiran Shanahan as the proper party for plaintiff's official capacity claims against Shanahan. See Fed. R. Civ. P. 25(d). Shanahan, however, remains a defendant as to plaintiff's individual capacity claims against him. The Clerk of Court is DIRECTED to add Frank Perry as a defendant in this action.

2

("NGE"), commonly referred to as "Five Percenters" or "The Five Percenters Nation." (Am. Compl. ¶¶ 9, 12.)

Plaintiff provides a detailed history of NGE and admits that NGE does not have "an organizational structure or hierarchy[.]" (Id. ¶¶ 12-18, 23.) NGE is similar to the Nation of Islam ("NOI") religion and has some overlapping teachings and practices with NOI because the groups share the same central text including "120 Degrees," "Supreme Mathematics," and "Supreme Alphabet." (Id. ¶ 16.) The study of these text is "essential [and] imperative within the NGE belief system in attaining knowledge of self." (Id. ¶ 17.) NGE members also study secondary texts including literature published by the "Allah School in Mecca," the "Allah youth Center in Mecca," "The Sun of Man Publications," "Supreme Design Publishing," and "A-Team Publishing." (Id. ¶ 20.) NGE members must study the primary and secondary texts in conjunction "to get a deeper meaning in the teachings." (Id.)

In addition to similar literature and practices, NGE and NOI share the same dietary restrictions and both groups refrain from consuming and using pork or pork products. (Id. ¶ 18.) The groups also share the practice of fasting in observance of the holy days. (Id. ¶ 19.) Specifically, NGE members observe the following holy days: (1) the birth and death of NCG founder, Clarence 13x; (2) the birthday of NOI founder W.D. Ford; and (3) the birthday of Elijah Muhammad. (Id.)

Not every aspect of NGE and NOI are similar. For instance, unlike NOI, NGE does not prohibit Caucasians from practicing its beliefs. (Id. ¶ 24.) NGE also has its own group services called "Civilization Classes," "Parliaments," and "Rallies." (Id. ¶ 22.) Civilization classes are conducted weekly and involve more experienced members "educat[ing] newer members in [NGE] lessons and how they can be applied." (Id.) Parliaments are monthly gatherings where members

3

"com[e] together and help one another gain[] insight from the [NGE] teachings and applications."

(Id.) Finally, "[r]allies are gatherings that are outside events held annually through June, July, [and] August which the lessons [and] its principles are discussed as well as celebrating activities." (Id.)

Members of NGE also use the "Five Percenters" newspaper as "a platform to carry the central message and teachings to the NGE community." (Id. ¶ 23.) The "Five Percenters" newspaper serves as a "vital [and] principle link" for incarcerated inmates to communicate with the NGE community outside of prison. (Id.)

Plaintiff states that the DPS administrative ban on the practice of NGE and designation of NGE as a "Security Threat Group" ("STG") prevents him from engaging in the above-referenced NGE practices and violates his constitutional rights. As relief, plaintiff requests:

> [1] . . . a declaration that the acts [and] omissions described herein violate his rights under RLUIPA [and] the Constitution; [2] a preliminary and permanent injunction pursuant to the RLUIPA ordering Defendants to remove the STG designation from the NGE, as well as creating a policy that will provide a means [] for accommodations to be made available for sincere Five Percenters to be accommodated to practices consistent with the NGE belief system . . . [3] [a] court [order directing] defendants to allow plaintiff to receive the NGE primary text[s] being a copy of the Supreme Mathematics, a copy of the Supreme Alphabet, [and] a copy of the 120 Degrees that [is] in accords to the NGE belief system [and] not in accords to the NOI belief system; [4] . . . [a] court [] order [directing] Defendants to provide plaintiff with a Vegan diet that [is] consistent with the NGE belief system as well as having plaintiff['s] prison meals served before sunrise [and] after sunset accommodating plaintiff with his fast in observance of Holy days consistent with the NGE belief system as well as provide or allow celebratory feast in commemoration of these holy days as privileges are extended to other legitimate groups such as NOI, MSTA, and Traditional Muslims; [5] . . . to allow plaintiff to receive [and] possess the "Five Percenters" newspaper, as well as receive and possess a medallion bearing the NGE Founder portrait [and/or] the "Universal Flag" and receive [and] possess authentic plus lessons published from the "Allah School In Mecca," the "Allah Youth Center In Mecca," and "The Sun of Man

4

Publications" as well as receive literature from Five Percenters Publishers such as "Supreme Design Publishing" [and] "A-Team Publishing" . . .

(Am. Comp. pp. 4-5.) Plaintiff additionally requests monetary damages.

## DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.    Analysis

1.    RLUIPA and First Amendment

Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with plaintiff's RLUIPA claim, RLUIPA provides, in part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n. 8).

As for plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const.

6

Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

In deciding whether a defendant's actions can be sustained as "reasonably related to legitimate penological interests," the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89–90. Claims pursuant to the First Amendment and RLUIPA are evaluated under the same factors, but First Amendment claims are subject to a less demanding standard of proof. See Lovelace, 472 F.3d at 199, n.8 ("RLUIPA adopts a 'more searching standard' of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.") (quoting Madison v. Ritter, 355 F.3d 310, 314-15 n.1.).

Defendants first argue that plaintiff failed to allege a substantial burden, for the purposes of RLUIPA or the First Amendment, because plaintiff states in his complaint that NGE is a culture and not a religion. The court, however, assumes for the purposes of the motion to dismiss that NGE constitutes a religion. This is consistent with the approach taken by other courts which have addressed the issue. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 468 (4th Cir. 1999); see also Coward v. Jabe, No. 1:10CV147, 2014 WL 932514, at * (E.D. Va. Mar. 10, 2014) ("Because an answer is not necessary to the ultimate decision here, it is enough to join other courts in simply assuming that NGE constitutes a religion.").

Defendants next argue that plaintiff failed to allege that the DPS policies at issue impose a substantial burden because plaintiff has the opportunity to practice NOI. Plaintiff, however, alleges in his complaint that while NGE and NOI are similar, they are separate religions and hold some different beliefs and practices. (Am. Compl. ¶¶ 13, 24.) Additionally, plaintiff alleges that the policies at issue impose restrictions on his ability to obtain and possess NGE literature and items (such as medallions), prevents him from receiving a vegan diet consistent with NGE practice, requires him to eat on NGE holy days, and prevents him from observing NGE holy days. Thus, the court finds that plaintiff has alleged sufficient facts to establish that the instant DPS policies substantially burden his practice of NGE.

Finally, defendants assert that plaintiff's RLUIPA and First Amendment claims should be dismissed because DPS has a compelling penological interest in fashioning and implementing policies prohibiting the practice of NGE or Five Percenters due to the security concerns associated with the group. Defendants, however, have not presented any evidence in order for the court to assess, for the purposes of its First Amendment analysis, the reasonableness of DPS's decision to

classify NGE as an STG and to impose the contested restrictive policies.  See Wisconsin v. Yoder, 406 U.S. 205, 221 (1972) ("Where fundamental claims of religious freedom are at stake . . . [the court] must searchingly examine the interests that the State seeks to promote."); see also, Johnson v. Jabe, No. 7:09CV00300, 2010 WL 3835207, at * (W.D. Va. Sept. 30, 2010) ("[O]ther courts have upheld the designation of NGE as an STG.  However, the contentions of prison officials in each of those cases were supported by specific examples of NGE members engaging in violent and dangerous behavior and acting in concert with one another to achieve unlawful ends."), aff'd, 456 F. App'x 318.

For the purposes of RLUIPA's statutory scheme, defendants failed to provide any evidence to support their claim of a compelling governmental interest.  Defendants further did not meet their burden under RLUIPA to acknowledge and give some consideration to less restrictive alternatives to the imposed restrictions.  Holt v. Hobbs, 135 S. Ct. 853, 866 (2015) ("Courts must hold prisons to their statutory burden, and they must not 'assume a plausible, less restrictive alternative would be ineffective.'") (quoting United States v. Playboy Entertainment, 529 U.S. 803, 824 (2000)); Couch, 679 F.3d at 203.  Based upon the foregoing, defendants' motion to dismiss plaintiff's RLUIPA and First Amendment claims is DENIED.

9

2.      Eighth Amendment

Plaintiff alleges that prison officials' refusal to accommodate his request for a vegan diet violated his rights pursuant to the Eighth Amendment.[2] "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The first prong is an objective one-the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted).

Here, plaintiff alleges that defendants ignored his repeated requests for a vegan diet. In support of his complaint, plaintiff submitted grievances reflecting that he requested a vegan diet and informed prison officials that he was foregoing the meat provided in his regular diet. (Am. Compl. ¶ 53 and Attach. Ex. B-1.) Plaintiff further informed prison officials that such circumstances caused him to experience fatigue and cramps. (Id.) Based upon the foregoing, plaintiff has sufficiently alleged an Eighth Amendment claim.

3.      Due Process

Plaintiff makes a blanket allegation that defendants violated his rights pursuant to the Due Process Clause. In order to prevail on either a procedural or substantive due process claim, an inmate first must demonstrate that he was deprived of "life, liberty or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). Here, plaintiff has not alleged any

---

[2] Plaintiff alleges that defendants' policy prohibiting plaintiff's access to a vegan diet violates both his First and Eighth Amendment rights.

10

facts to support a due process claim, and his conclusory allegations of a due process violation fail

to state a claim. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").

        4.      Supervisor Liability

Defendants seek to dismiss plaintiff's supervisor liability claims. A supervisor may be liable

for the actions of a subordinate if:

> (1)     the supervisor had actual or constructive knowledge that his
> subordinate was engaged in conduct that posed 'a pervasive
> and unreasonable risk' of constitutional injury to citizens like
> the plaintiff;
>
> (2)     the supervisor's response to that knowledge was so
> inadequate as to show 'deliberate indifference to or tacit
> authorization of the alleged offensive practices'; and
>
> (3)     there was an 'affirmative causal link' between the
> supervisor's inaction and the particular constitutional injury
> suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Plaintiff alleges that defendants have personally promulgated policies that violate his

constitutional rights. This is sufficient to state a claim against these defendants. See Fisher v.

Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982) (finding

that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal

conduct or on another's conduct in execution of the defendant's policies or customs), abrogated on

other grounds by, Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). Thus, defendants' motion

to dismiss this claim is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE 39) is GRANTED in part and DENIED in part. Defendants' motion is granted as to plaintiff's due process claim, but DENIED as to plaintiff's remaining claims. The issue of qualified immunity is reserved for another day. The Clerk of Court is DIRECTED to add Frank Perry as a defendant in this action. An initial order will follow.

SO ORDERED, this the 26th day of February, 2015.


_____
LOUISE W. FLANAGAN
United States District Judge

12