IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3193-FL

| | |
|---|---|
| ANTOINE MONTEZ MILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DAVID GUICE, GEORGE SOLOMON, ) | |
| GWEN NORVEIL, LARRY DUNSTON, ) | |
| KIERAN SHANAHAN, BETTY ) | |
| BROWN, and FRANK PERRY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 87). Also before the court is plaintiff's motion to reopen discovery (DE 92). The issues raised have been fully briefed and are ripe for adjudication. As explained below, plaintiff's motion to reopen discovery is denied and defendants' motion for summary judgment is denied.

**STATEMENT OF THE CASE**

The procedural background is set forth in this court's September 23, 2016 order, and restated in relevant parts here. On August 14, 2013, plaintiff filed a § 1983 action claiming violations of the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") pertaining to his beliefs under the Nation of Gods and Earths ("NGE").[1] On November 27, 2013, plaintiff filed

---

[1] Both plaintiff and defendants recognize the relative interchangeability of the terms "Nation of Gods and Earths" and "Five Percenters." (See Am. Compl. ¶ 12; Dunston Aff. ¶ 7; Brown Aff. ¶ 10). The court will use the abbreviated term "NGE" when possible in accordance with plaintiff's definition when referring to the belief system as a whole. (See Am. Compl. ¶ 12).

a verified amended complaint adding claims of alleged violations of the Eighth Amendment and Fourteenth Amendment Due Process and Equal Protection Clauses. On July 28, 2014, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 26, 2015, in response to defendants' motion to dismiss, the court dismissed plaintiff's due process claim. On March 2, 2015, the parties received a discovery deadline of August 3, 2015. On November 2, 2015, defendant filed a motion for summary judgment arguing that no violation of plaintiff's constitutional rights had occurred, and plaintiff responded in opposition.

On September 23, 2016, the court determined that plaintiff had not established any constitutional violations or violations under RLUIPA for his NGE claims of corporate worship, fasting, possessing religious texts, a vegan diet, and possession of a medallion or flag. Plaintiff appealed the court's judgment, and on April 21, 2017, the Fourth Circuit affirmed in part, vacated in part, and remanded the judgment. The Fourth Circuit affirmed the district court's analysis of the underlying claims, except for the treatment of plaintiff's fasting claim. See Miles v. Guice, 688 F. App'x 177, 179 (4th Cir. 2017) (per curiam). For the fasting claim, the court vacated and remanded the court's order, holding that failure to accommodate fasting on holy days does present a substantial burden under RLUIPA and should be analyzed under a strict scrutiny standard. Id.

On May 24, 2017, the court requested further briefing from the parties on whether the defendant prison officials' asserted failure to accommodate fasting by plaintiff on holy days violated RLUIPA under a strict scrutiny standard. On August 9, 2017, defendants filed the instant motion, a second motion for summary judgment, claiming that they meet the standard under strict scrutiny, and including the affidavit of Kelli Harris (DE 89-1), a non-party, to their appendix to the statement of material facts. In support of their motion, they also rely upon plaintiff's response in opposition

to defendants' first motion for summary judgment (DE 62-5), plaintiff's amended complaint (DE 8), and incorporate all sources relied upon in their first motion for summary judgment (DE 57), including: defendant Dunston's affidavit (DE 58), defendant Brown's affidavit (DE 59), defendant Dunston's supplemental affidavit (DE 67), defendant Brown's supplemental affidavit (DE 70), and plaintiff's administrative grievances (DE 1-1).

In response, on September 7, 2017, plaintiff filed a motion to reopen the discovery period and an extension of time to file a response to defendants' second motion of summary judgment. Plaintiff states that because of his previous housing in a restrictive housing unit and his lack of knowledge regarding the discovery process, he was unable to conduct discovery. Plaintiff requests an additional discovery period in order to respond to defendants' instant motion. In plaintiff's previous response to defendants' motion for summary judgment (DE 62), plaintiff relied upon his amended complaint (DE 8) and included the following in his appendix to his response: administrative grievances (DE 62-1), articles on NGE (DE 62-5), NCDPS procedures for religious menu accommodations (DE 62-5), his petition for religious accommodation (DE 62-5), records from a past investigation (DE 62-5), three declarations providing statements by other prisoners (DE 62-5), and plaintiff's own declaration (DE 73-1).

On October 13, 2017, defendants responded in opposition to plaintiff's motion, arguing that plaintiff has not demonstrated any permissible excuse for not conducting discovery and that the effect of re-opening discovery would be prejudicial because two years have passed since the expiration of the discovery period.

## STATEMENT OF THE FACTS

The factual background is set forth in this court's September 23, 2016 order, and restated in relevant parts here. Except as where otherwise identified below, the facts viewed in the light most favorable to plaintiff may be summarized as follows. Plaintiff, a state prisoner, challenges defendants' refusal to accommodate his fasting schedule on NGE holy days. Plaintiff alleges NGE is a legitimate religion, founded in New York nearly fifty years ago. (See Am. Compl. ¶ 12); (Pl.'s Dec. (DE 73-1) ¶ 4). Plaintiff alleges, as an adherent to NGE, that he needs to keep a strict diet, which includes fasting on holy days. (See Am. Compl. ¶ 15). According to plaintiff, there are four NGE holy days. (See id. ¶ 19). Two of the four holy days are also observed by the Nation of Islam ("NOI").[2] (See id. ¶¶ 15, 19). On these holy days, plaintiff alleges that he "is placed in a position to follow his beliefs in observing holy days and save his food in light of policy by violating policy [. . .] Therefore when Holy Days approach he has to choose to save his food or eat his food, which both options are violating a policy or a tenant. Thus plaintiff eats nothing." (Id. ¶ 35). Adversely, defendants contend that "fasting is not a practice or religious exercise of the NGE or the Five Percenters." (Def.s' Mem. (DE 90) 7).

NGE is not recognized by the North Carolina Department of Public Safety ("NCDPS") as a religion. (Brown Aff. ¶ 10). Plaintiff did seek religious recognition for NGE, but NCDPS denied his petition. (See id. Ex. C). In their decision to deny religious recognition, the Religious Practice Committee ("RPC") concluded the "Five Percenters" were not a religion, based upon their own materials which "unequivocally states that they are not a religion, but a culture. They have been

---

[2] The NGE holy days according to plaintiff are: "anniversaries of 1) the Birth (2/22) and 2) the death of NGE Founder, Clarence 13x (6/13), 3) Birthday of NOI Founder W.D. Fard (2/26) and 4) Birthday of Elijah Mohammad (10/7)." (Am. Compl. ¶ 19).

determined to be a violent hate group by security professionals." (Brown Suppl. Aff. ¶ 10). NCDPS designates NGE as a Security Threat Group ("STG") with connections to the gang, the United Blood Nation ("UBN"). (Dunston Aff. ¶¶ 7–9). Defendants assert Five Percenters are engaged in violence and gang culture within the North Carolina prison system. Specifically, as of October 30, 2011, defendants classified plaintiff as a Five Percenter, Level III UBN member, and High Security Maximum Control prisoner because of his "pattern of behavior" and two assault incidents, taking place in 2007 and 2009. (See Dunston Suppl. Aff. ¶¶ 12, 13). Aside from plaintiff's actions, defendant Dunston provides two examples over the past four years involving "Five Percenter" violence, the first involving a Five Percenter and UBN member at Alexander Correctional, and the second incident involving a Five Percenter at Tabor Correctional. (Id. ¶¶ 19–20). Additionally, defendant Brown cites one example from the South Carolina prison system involving "Five Percenters" and violence that occurred nearly twenty years ago. (See Brown Aff. ¶ 13).

Defendants also assert the NGE's beliefs are racist. (Id.). Further, defendant Brown states "Five Percenters" are banned "in almost every correctional system in the nation."[3] (Brown Suppl. Aff. ¶ 15). Defendant Brown also asserts that she "personally, do[es] not know of any correctional system that recognize[s] NGE as a religion." (Id. ¶ 16). Defendant Dunston states, "[t]hey are not a religion nor do they hold themselves out to be. This is a belief shared by nearly every correctional system in the United States." (Dunston Suppl. Aff. ¶ 23).

---

[3] This is consistent with defendant Brown's prior testimony with this court. In Rogers v. Jackson, she stated that the "Five Percenters are thought to be banned both in the Federal Bureau of Prisons and the prison systems of many states." Rogers v. Jackson, No. 5:15-CT-3092-FL, 2017 WL 4246866 at *9 (E.D.N.C. Sept. 25, 2017).

Because NGE is not recognized as a religion by NCDPS, they are not entitled to religious accommodations, such as fasting. (See Harris Aff. ¶¶ 16, 23). Islam is a NCDPS recognized religion. (Brown Aff. ¶ 19). As such, fasting for Ramadan is accommodated. During Ramadan,

> "Correctional Food Services staff must develop a plan and menu that can be prepared for pre-dawn and post-sunset meals. This requires each facilities food service staff to prepare meals early during Ramadan, causing inmates and staff to report to work early. It also requires that the evening meal be served late to Muslim inmates, which again, disrupts the operations of the food services staff and the correctional staff assigned to escort inmates to and [from] the facility dining hall. For inmates in single-cell or restrictive housing, their meals must be prepared and packaged by food services staff ahead of regularly scheduled meals and must be served by correctional services staff ahead of all other inmate meals." (Harris Aff. ¶ 12).

Further, "[i]n order to supplement the caloric intake of fasting inmates, food service staff are also required to package additional supplemental pack-out meals for inmates to consume in their cells. (Id. ¶ 13).

## DISCUSSION

A.  Motion to Reopen Discovery

As for plaintiff's motion to reopen discovery, the motion is DENIED. Plaintiff fails to show good cause, where plaintiff did not conduct discovery during the entire discovery period. Plaintiff's restricted prisoner status does not excuse his decision not to attempt discovery.

To the extent that plaintiff contends he cannot respond to defendants' motion for summary judgment without reopening discovery, "summary judgment is appropriate only after adequate time for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted); see Fed. R. Civ. P. 56(d). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d).

Thus, Rule 56(d) permits a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986); Nader v. Blair, 549 F.3d 953, 961–62 (4th Cir. 2008).

A party requesting relief pursuant to Rule 56(d) must demonstrate that the party has not had sufficient time to develop information needed to oppose the summary judgment motion. See, e.g., Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). In making its determination, a court may consider the diligence that the nonmoving party has demonstrated in pursuing discovery during the discovery period. See, e.g., White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 n.2 (4th Cir. 2004); Harrods Ltd., 302 F.3d at 245; Strag v. Bd. of Trs., 55 F.3d 943, 953–54 (4th Cir. 1995). A court also may consider whether the case "involves complex factual questions about intent and motive." Harrods, 302 F.3d at 247. Plaintiff has not made the requisite showing as plaintiff did not file, or allege he attempted to file, a single discovery motion during the discovery time period. Thus, the court reviews defendants' motion for summary judgment.

B.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). To bring a RLUIPA claim, a plaintiff must demonstrate that a governmental entity substantially pressured them to modify their behavior and to violate their religious beliefs in order to demonstrate that their religious practice has been substantially burdened. See Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). A plaintiff is not required, as part of this prima facie showing, to prove that the exercise at issue is required by or essential to their religion. See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). Citing Lovelace, the Fourth Circuit held in this case that "[f]ailing to accommodate fasting on holy days, however, is a substantial burden" on plaintiff's exercise of religion. Miles, 688 F. App'x at 179; see also Lovelace, 472 F.3d at 187.

Once plaintiff makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009). "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Ozmint, 578 F.3d at 252 (quotations

omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch v. Jabe, 679 F.3d 197, 201 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 190); see Holt v. Hobbs, 135 S. Ct. 853, 866 (2015).

      a.     Strict Scrutiny

In its opinion on appeal in this case, the Fourth Circuit held that plaintiff had established a prima facie case with respect to his claim that NCDPS's failure to accommodate his fasting for NGE holy days is a substantial burden on his exercise of religion. See Miles, 688 F. App'x at 179. Accordingly, the issue before the court is whether defendants' policies regarding plaintiff's fasting claim satisfy strict scrutiny. Defendants contend that their policies satisfy strict scrutiny for the following reasons: (1) plaintiff is not entitled to a fasting accommodation for NGE holy days because NGE is not a NCDPS recognized religion; (2) NGE's relationship with prison violence and the risks associated with providing plaintiff a specialized diet plan jeopardizes institutional security; and (3) the administrative burden imposed on the prison system to accommodate plaintiff's fasting request is significant. The court will now consider each argument in turn.

          i.     Religious Recognition

Defendants argue that their policies satisfy strict scrutiny because NCDPS does not recognize NGE as a religion, and other prison systems do not recognize NGE as a religion. (See Harris Aff. ¶ 16; see also Dunston Suppl. Aff. ¶ 23). As opposed to a religion, defendants contend NGE is a culture and "violent hate group[,]" with strong connections to the UBN. (See Brown Suppl. Aff. ¶ 10; see also Dunston Aff. ¶¶ 7–9). As such, defendants indicate NGE is designated as a STG, and

9

is not entitled to religious recognition. (See Brown Suppl. Aff. ¶ 10; see also Dunston Aff. ¶¶ 7–9). In support of their classification of NGE as a STG, defendants describe four incidents of prison violence that occurred in North Carolina since 2007, and one incident that occurred in South Carolina over twenty years ago involving "Five Percenters," the UBN, and NGE. (See Dunston Suppl. Aff. ¶¶ 12–13, 19–20); (see also Brown Aff. ¶ 13).

Defendant's argument based upon non-classification of NGE as a religion misses the mark for several reasons. First, the Fourth Circuit in its opinion on appeal already held that plaintiff established that not being able to fast on NGE "holy days" in accordance with his beliefs in NGE constitutes a substantial burden on his "exercise of religion." Miles, 688 F. App'x at 179. The court need not determine whether other claimed aspects of the practice of NGE, which may or may not be implicated by defendants' argument, constitute religious beliefs under RLUIPA. For purposes of the instant analysis, it suffices that the Fourth Circuit has held that not being able to fast on NGE holy days constitutes a substantial burden on a religion.

Second, several other states have recognized NGE as a religious group in their prison systems,[4] and NGE has received religious recognition in various district courts. See Coward v. Robinson, No. 110-cv-147 (LMB/MSN), 2017 WL 3699866, at *12–13 (E.D. Va. Aug. 28, 2017); Hardaway v. Haggerty, No. 05-70362, 2011 WL 761494, at *8 (E.D. Mich. Feb. 25, 2011); Panayoty v. Annucci, 898 F. Supp. 2d 469, 477, 482–83 (N.D.N.Y. 2012); Wright v. Fayram, No. C11-0001, 2012 WL 2312076, at *8 (N.D. Iowa June 18, 2012); Vangel v. Aul, No. 15-43L, 2015

---

[4] According to a survey prepared by the Virginia Department of Corrections in Coward v. Robinson, No. 110-cv-147 (LMB/MSN), 2017 WL 3699866, at *12–13 (E.D. Va. Aug. 28, 2017), out of the thirty-three received state responses, thirteen states do not recognize NGE as a religion, with North Carolina included in this group, while fifteen states do voluntarily recognize NGE as a religion. See id. at *12. Further, the NGE has received recognition as a religion, through lawsuits in court systems in eight other states. Id.

WL 5714850, at *6 (D.R.I. June 19, 2015). While the Fourth Circuit has declined to answer whether NGE, as a whole, is a religion, see, e.g., Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2015), the weight of authority, including the Fourth Circuit's opinion in this matter, suggests religious recognition for certain NGE practices is appropriate.

Third, plaintiff also presents evidence, through declarations, literature and excerpts from NGE publications, and administrative grievances, in support of his position that NGE is a legitimate religion. (See Pl.'s Mem. (DE 62-5), Ex. A-B; Pl.'s Dec. (DE 73-1) ¶¶ 1–3, 8; Pl.'s Resp. (DE 62-1), Ex. B-1). In his declaration, plaintiff rejects defendants' classification of NGE and the UBN as "essentially the same organization," asserting that the "NGE has had a legitimate existence out of the prison context for going on 50 years." (Pl.'s Dec. (DE 73-1) ¶ 4). Plaintiff contends in his verified amended complaint that NGE's existence is more than cultural, and that it is religious. (See Am. Compl. ¶¶ 11–26). Viewing the facts in the light most favorable to plaintiff, as the court must at this stage of proceedings, defendants have failed to demonstrate that NGE's classification alone, as a whole, provides a basis in itself for overcoming the substantial burden on plaintiff's exercise of religion through fasting on NGE holy days.

      ii.      Institutional Security

Defendants argue their policies satisfy strict scrutiny because accommodating plaintiff's fasting claim jeopardizes institutional security. (See Def.s' Mem. (DE 90) 9, 11). Defendants argue, citing security incidents noted above, that special dietary treatment promote jealousy and increase security risks in the prison for both prisoners receiving special diet items and staff members providing them. (See id. 3). Additionally, defendants argue officers are at risk when their shift changes are moved in order to accommodate specialized meal times. (Id.).

Defendants' arguments are not persuasive, however, viewing the facts in the light most favorable to plaintiff. On the record before the court, it is not clear, based on the security incidents referenced by defendants, which incidents relate to NGE members espousing religious views. Defendants' cross-classification of NGE with different religious titles, such as Five Percenter, NGE, and NOI, as well as gang-affiliations, such as the UBN, make it difficult to discern what violence is specifically related to adherents of NGE or particular tenants of the belief system, such as fasting in this instance. (See Dunston Suppl. Aff. ¶¶ 7, 19, 20; see also Brown Aff. ¶ 13). Further, defendants' argument that special dietary treatment promotes jealously, as well as security risks for officers who need to change shifts, are unpersuasive because defendants already plan for and accommodate Ramadan, despite these risks. (See Def.s' Mem. (DE 90) 3).

Therefore, defendants have not demonstrated that NCDPS's failure to accommodate plaintiff's fasting claim due to security concerns is the least restrictive means of furthering a compelling governmental interest.

### iii. Administrative Burden

Defendants also argue that the administrative burden on the prison system to accommodate religious fasting and dieting is significant. (See Def.s' Mem. (DE 90) 2–4). For instance, correctional food service staff must develop custom menus to accommodate fasting, which implicates time, cost, and facility operations. (See id. 3, 4, 7). In addition to menu planning, defendants argue that extended mealtime hours add cost to the facility. (See id. 3). Specifically, defendants cite the administrative burdens that the accommodations for Ramadan impose on the operations of the prison system, including: planning for and creating a menu to accommodate pre-dawn and post-sunset meals; earlier work hours for both staff and prisoners; additional meal

escort service; and packaged meals for prisoners in single-cell or restrictive housing. (See Harris Aff. ¶ 12). Defendants argue that these administrative burdens are why accommodations are only made for NCDPS recognized religions. (See id. ¶¶ 12, 23). Further, defendants argue that plaintiff is not prevented from fasting on his own behalf privately, using his own money to purchase items from the canteen. (See Def.s' Mem. (DE 90) 3, 7). Defendants also argue that if they grant one specialized diet request, such as plaintiff's request to fast, they could be overwhelmed by every prisoner submitting a specialized diet request. (See id. 11).

Defendants' arguments in this vein again depend upon NCDPS's refusal to recognize NGE as a religion, (see Harris Aff. ¶¶ 12, 23), which as set forth above is not a sufficient basis for failing to accommodate the practice of fasting on NGE holy days. While there are administrative burdens to the system to accommodate religious fasting, defendants concede that they make these accommodations for other NCDPS recognized religions. (See id. ¶ 12); see also Lovelace, 472 F.3d at 187–89 (providing Muslims prisoners an option to fast for Ramadan); Ben-Levi v. Harris, No. 5:15-CT-3125-BO, 2017 WL 2199816, at *3 (E.D.N.C. Feb. 9, 2017), aff'd, 687 F. App'x 295 (4th Cir. 2017) (providing a Kosher meal plan option for Jewish prisoners).

Defendants do not address in their argument whether plaintiff would be entitled to a fasting accommodation for NGE holy days, if the NGE practice of fasting was recognized by defendant as a religious practice. Rather, defendants rely on the current policy that because NGE is not a recognized religion, its followers are not entitled to a fasting accommodation. (See Def.s' Mem. (DE 90) 2–4, 11).

Further, defendants' contention that if they granted one prisoner's request for a specialized diet it could lead to every prisoner requesting a specialized diet, is only applicable in the non-

13

recognized religion context. (See Def.s' Mem. (DE 90) 11). Defendants' own evidence demonstrates that if a religion is recognized, as Islam is, and followers of that religion fast as part of their religious beliefs, then the prison system accommodates it by creating a plan suitable for the prison environment, despite the administrative burden. (See Harris Aff. ¶ 12). Therefore, defendants have not demonstrated that administrative burden provides a sufficiently compelling basis for imposing a substantial burden on plaintiff's exercise of religion.

In sum, defendants have not demonstrated that NCDPS's policy, refusing to recognize any aspect of NGE as a religion, and thus refusing to accommodate plaintiff's fasting on NGE holy days, is the least restrictive means of furthering a compelling government interest. Based upon the foregoing, there is a genuine issue of material fact which precludes summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Thus, defendants' motion for summary judgment is DENIED.

      b.     Negligence

Defendants also argue that plaintiff failed to establish the requisite intent for a RLUIPA violation, which requires more than negligence and is satisfied by intentional conduct. (Def.s' Mem. (DE 90) 13) (citing Lovelace, 472 F.3d at 194–95). However, it is clear plaintiff alleges defendants denied him his fasting accommodation intentionally, as part of NCDPS policy not to recognize NGE as a religion. (See Am. Compl. ¶ 35); (see also Brown Aff. Ex. C). Therefore, plaintiff establishes the requisite intent for a RLUIPA violation, and defendants' motion to summary judgment on this ground is DENIED.

      c.     Mootness

Finally, defendants argue that the case is moot because plaintiff was transferred from Central Prison to Pasquotank Correctional Institution. (See Def.'s Mem. (DE 90) 13–14). However, plaintiff is still in NCDPS custody and subject to their policies, which include the challenged policy that NCDPS does not recognize NGE as a religion. (See Brown Aff. ¶ 10). Thus, plaintiff's claim is not moot, and defendants' motion to summary judgment on this ground is DENIED.

## CONCLUSION

For the foregoing reasons, the court ORDERS:

1) Plaintiff's motion for an extension of time to conduct discovery (DE 92) is DENIED;

2) Defendants' motion for summary judgment (DE 87) is DENIED;

3) The court refers this action to Magistrate Judge Robert B. Jones for a court-hosted settlement conference. In the event the parties fail to agree to a resolution of this action, the matter will be set for trial. North Carolina Prisoner Legal Services is appointed for the limited purpose of representing plaintiff at the settlement conference.

SO ORDERED, this the 22nd day of January, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge